# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOHAMMAD MIRMEHDI; MOSTAFA
MIRMEHDI; MOHSEN MIRMEHDI;
MOJTABA MIRMEHDI,
          *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA; MARIO
LOPEZ; JOHN ASHCROFT; ROBERT S.
MUELLER, III; JAMES W. ZIGLAR;
MICHAEL GARCIA, Esquire;
CHRISTOPHER CASTILLO; JAMES
MACDOWELL,
          *Defendants-Appellees.*

No. 09-55846

D.C. No.
2:06-cv-05055-
R-PJW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
August 30, 2011—Pasadena, California

Filed November 3, 2011
Amended June 7, 2012

Before: Arthur L. Alarcón, Diarmuid F. O'Scannlain, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge O'Scannlain;
Concurrence by Judge Silverman

6377

**COUNSEL**

Paul L. Hoffman, Schonbrun DeSimone Seplow Harris Hoffman & Harrison LLP, Venice, California, argued the cause and filed the briefs for the plaintiffs-appellants. With him on the briefs were Michael Seplow, Adrienne Quarry, and Victoria Don, Schonbrun DeSimone Seplow Harris Hoffman & Harrison LLP, Venice, California.

Andrew D. Silverman, United States Department of Justice, Torts Branch, Civil Division, Washington, D.C., argued the cause and filed the briefs for the defendants-appellees. With him on the brief were Jeremy S. Brumbelow, Tony West, Timothy P. Garren, and Andrea W. McCarthy, Department of Justice Civil Division, Washington, D.C.

## ORDER

The opinion filed in this case on November 3, 2011, and reported at 662 F.3d 1073, is hereby amended. An amended opinion is filed concurrently with this order. With this amendment, the panel has unanimously voted to deny the petition for rehearing. Judges O'Scannlain and Silverman have voted to deny the suggestion for rehearing en banc, and Judge Alarcón has so recommended. The full court has been advised of the petition for rehearing en banc, and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the suggestion for rehearing en banc are DENIED. No subsequent petitions for rehearing or suggestions for rehearing en banc may be filed.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are asked to decide, among other things, whether an alien not lawfully in the United States may sue for monetary damages claiming constitutionally invalid detention.

## I

Mohammad, Mostafa ("Michael"), Mohsen, and Mojtaba Mirmehdi (collectively the "Mirmehdis") are four citizens of Iran who came to the United States at various times, purportedly due to their long-standing opposition to that nation's theocratic regime. In 1978, Michael arrived on a student visa. Having abandoned the degree that earned him entry into the United States, he became a real estate agent in 1985. Mohsen, Mojtaba, and Mohammad joined Michael in California in the early 1990s. Mohsen and Mohammad also became real estate

agents. Unable to pass the real estate licensing exam, Mojtaba worked in construction.

In 1998, the Mirmehdis applied for political asylum with the assistance of an attorney named Bahram Tabatabai. Tabatabai falsified certain details in the Mirmehdis' applications. After Tabatabai was arrested for immigration fraud in March 1999, he agreed to cooperate with federal authorities. As part of his plea bargain, Tabatabai spoke to Special Agents Christopher Castillo of the Federal Bureau of Investigation and J.A. MacDowell of the Immigration and Naturalization Service regarding their ongoing investigation of a terrorist group known as the Mujahedin-e Khalq ("MEK"). Though he later recanted, Tabatabai told Castillo and MacDowell that the Mirmehdis were supporters of the group, which was founded on an antipathy for the Iranian government.

Based on this information, agents arrested the Mirmehdis for immigration violations in March 1999. Michael, Mojtaba, and Mohsen were released on bond later that year; Mohammad was released in September 2000.

On October 2, 2001, immigration authorities revoked the Mirmehdis' bond, largely based on a document known as the "L.A. Cell Form," a handwritten piece of paper that has become the subject of considerable litigation and is at the center of this case. The government has always maintained that the Form lists members, affiliates, and supporters of the MEK. During the Mirmehdis' bond revocation proceedings, Castillo testified to the immigration judge ("IJ") that the FBI seized the document from an MEK facility and that a confidential informant told him of its significance.

The Mirmehdis have always denied their involvement in the MEK and allege that Castillo and MacDowell knew from the start that the document was really just a list of attendees at a rally hosted by the National Council of Resistance of Iran ("NCRI"). It is undisputed that the MEK was listed as a ter-

rorist group in 1997 and is affiliated with the NCRI. But the Mirmehdis assert that they attended the rally *before* that classification occurred.

The Mirmehdis also assert that Castillo knowingly lied to convince the IJ to revoke their bond. They claim that the cooperating witness never existed and that Castillo's testimony before the IJ unreasonably continued to rely upon Tabatabai, even after he recanted. Castillo's motive, the Mirmehdis contend, was to pressure them into giving up information about the MEK that they did not possess.

The Mirmehdis' assertions are not new. They raised them on direct appeal of their detention, during the merits proceeding related to their asylum applications, and in a federal petition for a writ of habeas corpus. Almost all such forms of relief were denied. The Mirmehdis were, however, granted withholding of removal because they had demonstrated a likelihood of mistreatment if removed to Iran, and because the government failed to establish that they were engaged in terrorist activity as defined by statute.

Their immigration proceedings at last final, the Mirmedhis were released from detention in March 2005. The Mirmehdis subsequently brought this suit naming as defendants: Attorney General John Ashcroft, FBI Director Robert Mueller, INS Commissioners James Ziglar and Michael Garcia, the City of Santa Ana, the City of Las Vegas, MVM, Inc., Castillo, MacDowell, several named prison guards, John Does 1-10, and the United States. They raised a number of claims including unlawful detention, inhumane detention conditions, witness intimidation, and the intentional infliction of emotional distress.

The district court dismissed almost all of the Mirmehdis' claims for either lack of personal jurisdiction or failure to state a cause of action. The parties later settled all claims except those against Castillo and MacDowell for unlawful

detention and conspiracy to violate their civil rights, against Castillo for intimidation of a witness, and against the United States for false imprisonment. The district court entered a final judgment, and the Mirmehdis timely appealed the claims to which they did not stipulate.

## II

**[1]** The Mirmehdis first appeal the dismissal of their claim against Castillo and MacDowell for wrongful detention under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Whether such a claim presents a cognizable legal theory has been an open question in this circuit. *See Wong v. United States INS*, 373 F.3d 952, 961 (9th Cir. 2004); *see also Sissoko v. Rocha*, 412 F.3d 1021, 1028 (9th Cir. 2005), *withdrawn and replaced,* 509 F.3d 947 (9th Cir. 2007).[2]

## A

In the past, we have suggested that "federal courts have inherent authority to award damages to plaintiffs whose federal constitutional rights were violated by federal officials." *Papa v. INS*, 281 F.3d 1004, 1009 (9th Cir. 2002). But as the

---

[1]The district court dismissed these claims based on its conclusion that the Mirmehdis had no constitutional right not to be detained pending deportation proceedings. We do not reach this issue because, even assuming such a violation, we must still decide whether *Bivens* provides for a theory for recovery. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986) ("We may affirm the judgment on any basis supported by the record even if the district court did not rely on that basis.").

[2]The Mirmehdis argue that we have, in fact, recognized an immigrant's right to pursue a *Bivens* action citing *Papa*, 281 F.3d 1004. But because cases like *Papa* did not squarely present the issue, it remains open. *See Berry v. Hollander*, 925 F.2d 311, 314 & n.3, 316 (9th Cir. 1991) (concluding that no *Bivens* action exists for government employees despite previously allowing such claims).

Supreme Court has since reminded us, "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Such a cause of action "is *not* an automatic entitlement *no matter what other means there may be* to vindicate a protected interest." *Id.* (emphasis added).

**[2]** Indeed, "[i]n the . . . years since *Bivens*," the Supreme Court has repeatedly rejected *Bivens* claims outside the context discussed in that specific case and has "extended it twice only: in the context of an employment discrimination claim in violation of the Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979); and in the context of an Eighth Amendment violation by [publicly employed] prison officials, [*Carlson v. Green*, 446 U.S. 14 (1980)]." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc). The Supreme Court has refused to extend *Bivens* to: violations of federal employees' First Amendment rights by their employers, *Bush v. Lucas*, 462 U.S. 367 (1983); harms suffered incident to military service, *United States v. Stanley*, 483 U.S. 669, (1987); denials of Social Security benefits, *Schweiker v. Chilikcy*, 487 U.S. 412 (1988); decisions by federal agencies, *FDIC v. Meyer*, 510 U.S. 471 (1994); actions by private corporations operating under federal contracts, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); retaliation by federal officials against private landowners, *Wilkie*, 551 U.S. at 562; or Eighth Amendment claims against private contractors hired to administer public prisons, *Minneci v. Pollard*, 132 S. Ct. 617 (2012).

The Court has also "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) (citing inter alia *Malesko*, 534 U.S. at 68). Such a decision implicates grave separation of powers concerns because the "creation of a private right of action raises [policy choices] beyond the mere consideration whether primary conduct should be allowed or

not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion." *Id.* For such reasons, the Court has instructed the federal courts to "respond[ ] cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker*, 487 U.S. at 421.

It quickly becomes apparent, however, that this query has a logical predicate—whether we would *need* to extend *Bivens* in order for illegal immigrants to recover for unlawful detention during deportation proceedings. Only after answering in the affirmative, would we need to turn to the issue of whether we *ought* to extend *Bivens* to such a context. *Arar*, 585 F.3d at 572.

**B**

To answer this question requires us to enter by a narrow gate. Examining the availability of a *Bivens* remedy at a "high level of generality" would "invite claims in every sphere of legitimate governmental action" touching, however tangentially, on a constitutionally protected interest. *Wilkie*, 551 U.S. at 561. Examining the question at too low a level of generality would invite never ending litigation because "every case has points of distinction." *Arar*, 585 F.3d at 572. As such, we join our sister circuit and "construe the word 'context' as it is commonly used in law: to reflect a potentially recurring scenario that has similar legal and factual components." *Id.*

**[3]** Deportation proceedings are such a context, unique from other situations where an unlawful detention may arise. It is well established that immigrants' remedies for vindicating the rights which they possess under the Constitution are not coextensive with those offered to citizens. *See, e.g.*, *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 488 (1999) ("*AADC*") ("As a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation."). Therefore, deportation proceedings constitute the relevant "environ-

ment of fact and law" in which to "decide whether to recognize a *Bivens* remedy." *Arar*, 585 F3d at 572.**³**

## C

**[4]** Having identified the appropriate context, we now must apply the Supreme Court's test from *Wilkie*, in which it "distilled its 35-year history of *Bivens* jurisprudence into a two-step analysis." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009). First we must "determine[ ] whether there is 'any alternative, existing process for protecting' the plaintiffs' interests." *Id.* If there is such an alternative remedy, our inquiry stops. If there is not, we proceed to the next step and "ask[ ] whether there nevertheless are 'factors counseling hesitation' before devising such an implied right of action." *Id.* The Mirmehdis' claim for unlawful detention founders at both obstacles.

**[5]** The Mirmehdis could—and did—challenge their detention through not one but two different remedial systems. As the Second Circuit stated: "Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration." *Arar*, 585 F.3d at 572. The availability of habeas is another remedy. *See Rauschenberg v. Williamson*, 785 F.2d 985, 987-88 (11th Cir. 1986). The Mirmehdis took full advantage of both.

**[6]** We are unpersuaded by the Mirmehdis' assertions they

---

**³**By identifying this as the appropriate frame of reference, we do not hold that an illegal alien may never bring a *Bivens* claim. Instead, we merely recognize that because Congress has the ability to "make rules as to aliens that would be unacceptable if applied to citizens," *Demoore v. Kim*, 538 U.S. 510, 521-22 (2003) (citing inter alia *Reno v. Flores*, 507 U.S. 292, 305-06 (1993) ("Thus, 'in the exercise of its broad power over immigration and naturalization,' Congress regularly makes rules that would be unacceptable if applied to citizens.")), we must consider whether an immigrant may bring a *Bivens* claim to vindicate certain constitutional rights separately from whether a citizen may bring such a *Bivens* claim.

are nonetheless entitled to a *Bivens* remedy because neither the immigration system nor habeas provides monetary compensation for unlawful detention. "Even where Congress has given plaintiffs no damages remedy for a constitutional violation, the Court has declined to create a right of action under *Bivens* when doing so 'would be plainly inconsistent with Congress' authority in th[e] field.' " *W. Radio Servs. Co.*, 578 F.3d at 1120 (quoting *Chappell v. Wallace*, 462 U.S. 296, 304 (1983)). Indeed, "[s]o long as Congress' failure to provide money damages . . . has not been inadvertent, courts should defer to its judgment." *Berry v. Hollander*, 925 F.2d 311, 314 (9th Cir. 1991) (internal quotation marks omitted).

Congress's failure to include monetary relief can hardly be said to be inadvertent, given that despite multiple changes to the structure of appellate review in the Immigration and Nationality Act, Congress never created such a remedy. *See Schweiker*, 487 U.S. at 423, 425 (1988) (considering "frequent and intense" congressional attention to "the design of a Government program [to] suggest[ ] that Congress has provided what it considers adequate remedial mechanisms for constitutional violations").

The complexity and comprehensiveness of the existing remedial system is another factor among a broad range of concerns counseling hesitation before allowing a *Bivens* remedy. *Id.* at 423; *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 280 (1997); *see also Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991) (considering the Civil Service Reform Act).

Furthermore, immigration issues "have the natural tendency to affect diplomacy, foreign policy, and the security of the nation," which further "counsels hesitation" in extending *Bivens*. *Arar*, 585 F.3d at 574. As the Supreme Court has noted, concerns that always mitigate against "subjecting the prosecutor's motives and decisionmaking to outside inquiry" have particular force in the immigration context. *AADC*, 525

U.S. at 490 (internal quotation marks omitted). Rather than mere "disclosure of normal domestic law-enforcement priorities and techniques" such cases often involve "the disclosure of foreign-policy objectives and (as in this case) foreign-intelligence products." *Id.* at 490-91.

**[7]** Accordingly, we decline to extend Bivens to allow the Mirmehdis to sue federal agents for wrongful detention pending deportation given the extensive remedial procedures available to and invoked by them and the unique foreign policy considerations implicated in the immigration context.

**III**

The Mirmehdis next appeal the dismissal of their claims against Castillo for witness intimidation and against both Castillo and MacDowell for conspiracy to intimidate a witness pursuant to 42 U.S.C. § 1985(2),[4] arguing that the district court erred by failing to find prejudice. Specifically, they argue that but for Castillo's supposed threats, Tabatabai was ready, willing, and able to testify that they were not supporters of the MEK.

**[8]** But "[a]llegations of witness intimidation . . . will not suffice for a cause of action [under section 1985] unless it can be shown the litigant was hampered in being able to present an effective case." *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987) (emphasis omitted). This rule applies to both witness intimidation and conspiracy to intimidate a witness. *Id.* at 1040; *see also Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735-36 (9th Cir. 1988).

---

[4]To the extent that the Mirmehdis bring a separate claim for conspiracy selectively to enforce immigration laws, such a claim does not exist. The Supreme Court has stated that for reasons implicating the constitutional separation of powers, "an alien unlawfully in this country has no constitutional right to assert [a claim of] selective enforcement" of immigration laws. *AADC*, 525 U.S. at 488.

**[9]** Even assuming that the Mirmehdis could have been prejudiced by the absence of a witness that the relevant fact finder had dismissed as not credible, the outcome of the Mirmehdis' immigration proceedings demonstrate that they were not so harmed.[5] According to the Mirmehdis, Tabatabai would have rebutted Castillo's testimony that they were involved with the MEK. As such, his testimony would have helped them to establish that they were eligible for withholding of removal because they were not involved with any terrorist activities as defined by 8 U.S.C. § 1182(a)(3)(B)(i). *See also* 8 U.S.C. § 1231(b)(3)(B). But the Mirmehdis were awarded withholding of removal even without Tabatabai's testimony. Therefore, they could not have been prejudiced by any alleged wrongdoing.[6]

## IV

The Mirmehdis also appeal the dismissal of their claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, arguing that they have stated a claim for false imprisonment under California law. "The United States, as a sovereign, may not be sued except insofar as it consents to be sued." *Rooney v. United States*, 634 F.2d 1238, 1241 (9th Cir. 1980). The FTCA does waive that immunity for certain torts, but it is subject to both procedural and substantive exceptions that "must be strictly interpreted." *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 590 (1941)).

---

[5]"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). But because the Mirmehdis referred to their related habeas and immigration cases on the face of their complaint, we may take judicial notice of any matters of public record. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

[6]We are not persuaded by the Mirmehdis' fallback argument that Tabatabai's testimony would have allowed them to reopen the bond determination because we see no evidence that they tried to do so, even after the IJ's initial decision in 2002.

**[10]** One such exception is that the United States may not be sued "based upon the exercise or performance or the failure to exercise or perform a discretionary function . . . , whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).**[7]** To determine whether conduct falls within this exception, we must first determine whether the "challenged conduct involves an element of judgment or choice" and then whether "the conduct implements social, economic or political policy considerations." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). We must also determine whether the "complaint alleges that the policy-making defendants promulgated discriminatory, unconstitutional policies which they had no discretion to create." *Id.* at 1002. Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, and because the Mirmehdis do not allege that this decision itself violated the Constitution, it falls within this exception. *Cf. Medina v. United States*, 259 F.3d 220, 229 (4th Cir. 2001) ("Even though the INS ultimately decided not to pursue the deportation of Medina, we are fully satisfied that the initial decision to initiate proceedings and arrest him was the type of agency conduct Congress intended to immunize in the discretionary function exception."); *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability.").**[8]**

---

**[7]**Though neither party raised this exception, because the applicability of an FTCA exception affects our jurisdiction, we must consider it sua sponte. *See Morris v. United States*, 521 F.2d 872, 875 & n.1 (9th Cir. 1975).

**[8]**This does not immunize from judicial review the conduct of the officers who made the arrest at an operational level. *Wright*, 719 F.2d at 1035. But, for the reasons discussed above, the Mirmehdis have not stated a claim on those grounds.

The Mirmehdis assert that the United States is nonetheless liable because Officer Castillo's knowingly false testimony to the IJ itself constituted false imprisonment under California law.⁹ This argument is unavailing under a second limitation imposed by the FTCA: the United States may not be held liable if the individual tortfeasor would be immune from suit. 28 U.S.C. § 2674; *see also Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (affirming the dismissal of an FTCA claim when California law would have immunized the officers for claims of false arrest). California law would not permit recovery against an individual defendant for testimony given to an IJ in a bond revocation proceeding.

[11] California has a very broad "litigation privilege," which provides absolute immunity for almost any statement made "in any . . . . official proceeding authorized by law," as against any tort except for malicious prosecution. Cal. Civ. Code § 47(2). Designed to promote open communication in official proceedings, the privilege covers even those statements not made in a court or even in existing litigation; they can be specifically intended to cause investigators to institute charges. *Tiedemann v. Superior Court*, 148 Cal. Rptr. 242 (Cal. Ct. App. 1978) (allowing immunity for statements by a confidential informant to the IRS). All that is required is that the communication be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) . . . have some connection or logical relation to the action." *Sil-*

---

⁹It is unclear that this states a claim for false imprisonment under California law. As we have previously noted, California law allows false imprisonment claims "for arrests by officers . . . in two situations: when an arrest is made without a warrant, . . . and when an officer 'maliciously arrests and imprisons another by personally serving an arrest warrant issued solely on *information deliberately falsified by the arresting officer himself*.' " *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 n.4 (2001) (emphasis added). There was a warrant here, and the Mirmehdis have never alleged that either Castillo or MacDowell participated in their actual arrests.

*berg v. Anderson*, 786 P.2d 365, 368-69 (Cal. 1990). A federal administrative hearing counts as a "quasi-judicial proceeding" if: "the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts", that body may "hold hearings and decide the issue by the application of rules of law"; and that body has the power to affect "the personal or property rights of private persons." *Tiedemann*, 148 Cal. Reptr. at 247 (internal quotation marks omitted). Malice is irrelevant to this definition. *Silberg*, 786 P.2d at 368-69. Castillo's testimony falls within these parameters. As the Mirmehdis have not brought a claim for malicious prosecution, they have not stated a claim for relief under the FTCA.[10]

## V

**[12]** Finally, the Mirmehdis appeal the denial of their motion to amend their complaint, arguing that they should be allowed an opportunity to comply with the heightened pleading requirements of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "[R]equests for leave [to amend] should be granted with 'extreme liberality,' " particularly when a complaint was filed before *Twombly* and fails for lack of sufficient factual content. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). However, a party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile. *See, e.g.*, *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980). As the Mirmehdis' woes are not

---

[10]The United States asserts that this testimony would also be immune under federal law. The Supreme Court has stated that both lay and law enforcement witnesses are absolutely immune for live testimony given either at a trial or before a grand jury. *Malley v. Briggs*, 475 U.S. 335 (1986) (trial testimony); *Rehberg v. Palk*, 132 S. Ct. 1497, 1507 & n.1 (2012) (grand jury testimony) (distinguishing cases where law enforcement officers falsify affidavits for the purpose of obtaining an arrest). We see little distinction between this case and those, but we need not reach the issue because California law already provides immunity here.

caused by insufficient allegations of factual content, no potential amendments would change the outcome.

## VI

For the forgoing reasons, the decision of the district court is

**AFFIRMED.**

---

SILVERMAN, Circuit Judge, concurring:

Although I concur in the opinion of the court, I write separately to emphasize that this case does not present the issue of whether illegal immigrants could *ever* bring a *Bivens* action. In fact, we have previously allowed an illegal immigrant to bring a *Bivens* action. *See Papa v. United States*, 281 F.3d 1004, 1010-11 (9th Cir. 2002) (holding that immigrant could bring *Bivens* action for alleged due process violations during immigration detention). However, in *this* case, I agree with my colleagues that the plaintiffs lack an implied right of action under *Bivens*.